UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PERSHING COUNTY, et. al.<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>SALLY JEWELL, et. al.<br><br>　　　　　　　Defendants. | 3:14-cv-00466-MMD-WGC<br><br>ORDER ON MOTION TO INTERVENE<br><br>(Doc. #19) |

Before the court is Defendant – Intervenor's Motion to Intervene filed by the American Wild Horse Preservation Campaign (AWHPC) and Debra Davenport (Ms. Davenport). (Doc. #19.) [1] Plaintiffs Pershing County, Tim DeLong Family Trust, Duncan Family 2002 Trust, Jim Estill, Forest (Woodie) Bell, Vesco Ranch, Inc., and C Punch Ranch, Inc., filed a response in opposition. (Doc. #50.) The AWHPC and Ms. Davenport filed a reply. (Doc. #57.) A hearing was held on Defendant – Intervenors' Motion on Monday, June 8, 2015.

**I. BACKGROUND**

On September 15, 2014, Plaintiffs filed their complaint for writ of mandamus, for declaratory judgment or for unreasonable delay, and such other relief under the Wild and Free Roaming Horses & Burro Act, 16 U.S.C. § 1331, et. seq., (the Act), the Administrative Procedure Act, 5 U.S.C. § 551, et. seq. (the APA), and other federal statutes and regulations related to the management of wild horses and burros in Nevada. (Doc. #1.) The named defendants include the United States Department of the Interior (COI); the Honorable Sally Jewell (Secretary of the Interior); the Bureau of Land Management (BLM); Neil Kornze (Deputy

---

[1] Refers to court's docket number. The AWHPC and Ms. Davenport accompanied their motion with the following: Doc. #19-1 (Memo in Support of Motion to Intervene); Doc. #19-2 (Suzanne Roy Decl.); Doc. #19-3 (Laura Leigh Decl.); Doc. #19-4 (Debra Davenport Decl.); Doc. #19-5 (Financial Disclosure Statement); Doc. #19-6 (Certificate of Service); Doc. #19-7 (Proposed Order); Doc. #19-8 ([Proposed] Answer)

1  Director, BLM); Amy Leuders (State Director, Nevada State Office, BLM); Gene Seidlitz
2  (Manager for the Winnemucca District of BLM) (hereinafter collectively referred to as "Federal
3  Defendants"). (*Id*.)
4  　　　　Plaintiffs allege that Federal Defendants' failure to address wild horse and burro
5  populations that are in excess of the appropriate management levels ("AML") for various public
6  lands within the Winnemucca BLM District, which includes on public lands with designated
7  Herd Areas ("HAs") or Herd Management Areas ("HMAs"), as well as non-HMA designated
8  public and private, have led to problems with vehicular traffic and with personal and real
9  property in Pershing County. (*Id*.) Plaintiffs seek, among other relief, a writ of mandamus
10 ordering Federal Defendants to immediately remove all the wild horses and wild burros within
11 each of the HMA(s) and HA(s) within the Tim Delong Family Trust, Jim Estill, Vesco Ranch,
12 LLC., Duncan Family 2002 Trust, Forrest (Woodie) Bell, C Punch Ranch, Inc., allotments, and
13 further to maintain the wild horse and wild burros numbers so as to not exceed the appropriate
14 management level already determined by Federal Defendants. (*Id*.) Furthermore, Plaintiffs want
15 the court to order, declare, and adjudge that an "overpopulation" of wild horses and wild burros
16 exists upon the public lands; that Federal Defendants must immediately remove the
17 "overpopulation" to "achieve appropriate management levels"; and that Federal Defendants
18 unlawfully withheld and/or unreasonably delayed the removal of "excess" wild horses and wild
19 burros within each of the HMA(s) and HA(s) within the aforementioned allotments. (*Id*.)
20 　　　On February 13, 2015, the Federal Defendants filed an answer. (Doc. #18.)
21 　　　On March 19, 2015, the AWHPC and Ms. Davenport (hereinafter collectively referred to
22 as "proposed intervenors" or "movants") filed their Motion to Intervene, (Doc. #19.) In support
23 of their motion, Plaintiffs included declarations from Suzanne Roy, Director of the AWHPC, and
24 Debra Davenport. (Doc. #19-2, Doc. #19-4.)
25 　　　　　　　　　　　　　**II. LEGAL STANDARD**
26 　　　Federal Rule of Civil Procedure 24 governs intervention and provides for intervention (1)
27 as a matter of right (Fed. R. Civ. P. 24(a)) and (2) permissive intervention (Fed. R. Civ. P.
28 24(b)).

1    Intervention as a matter of right must be granted if on timely motion, the proposed
2 intervenor can establish that the right to intervene is provided unconditionally by federal statute
3 or "claims an interest relating to the property or transaction that is the subject of the action, and
4 is so situated that disposing of the action may as a practical matter impair or impede the
5 movant's ability to protect is interest, unless existing parties adequately represent that interest."
6 Fed. R. Civ. P. 24(a).

7    In the Ninth Circuit, an applicant seeking to intervene as a matter of right must
8 demonstrate: (1) the intervention application is timely; (2) the applicant has a significant
9 protectable interest relating to the property or transaction that is the subject of the action; (3) the
10 disposition of the action may, as a practical matter, impair or impede the applicant's ability to
11 protect its interest; and (4) the existing parties may not adequately represent the applicant's
12 interest. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2012)
13 (citations and quotation marks omitted); *see also Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d
14 1173, 1177 (9th Cir. 2011).

15    Permissive intervention also requires a timely motion, and *may* be granted to an applicant
16 who has a "conditional right to intervene by a federal statute" or "has a claim or defense that
17 shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In
18 deciding whether to grant permissive intervention, "the court must consider whether the
19 intervention will unduly delay or prejudice the adjudication of the original parties' rights."
20 Fed. R. Civ. P. 24(b)(3).

21    Regardless of whether the applicant seeks to intervene as a matter of right or
22 permissively, the Ninth Circuit has established a liberal policy favoring intervention. *Wilderness*
23 *Soc.*, 630 F.3d at 1179. This allows for "both efficient resolution of issues and broadened access
24 to the courts." *Id.* (citations and quotation marks omitted).

### III. DISCUSSION

26    Proposed intervenors seek to intervene as a matter of right, and alternatively, request
27 permissive intervention. The Federal Defendants take no position concerning proposed
28 intervenor's Motion to Intervene. The Plaintiffs have a filed a response in opposition to the

- 3 -

motion to intervene. The court will first address whether they are entitled to intervene as a matter of right, and then will turn to the question of permissive intervention as an alternative request.

## A. INTERVENTION AS A MATTER OF RIGHT

### 1. Timeliness

Timeliness is "the threshold requirement' for intervention as of right." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (quoting *United States v. Or*, 913 F.2d 576, 588 (9th Cir. 1990)). In determining whether a motion to intervene is timely, a court should consider: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay." *Id*. (quotation marks omitted).

The motion is timely because no other proceedings or motions were filed between the Federal Defendants' answer and this motion, a time period of one month. Additionally, Plaintiffs do not contest the timeliness of the motion to intervene. Therefore this factor weighs in favor of granting the motion to intervene.

### 2. Is there a Significant Protectable Interest?

The applicant seeking to intervene as a matter of right must show that the "interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc.*, 630 F.3d at 1179 (citation and quotation marks omitted). This can be demonstrated if the applicant "will suffer a practical impairment of its interest as a result of the pending action." *Id*. (citation and quotation marks omitted). "[N]o specific legal or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (citations and quotation marks omitted).

The AWHPC contends that it has a significant protectable interest in preserving the American wild horse and burro in viable free-roaming herds on public lands for future generations. (Doc. #19-2 at 3 ¶ 1.) It contends that Nevada is home to over half the nation's wild horses and burros. BLM estimates that there are approximately 42,209 wild horses and burros in public lands throughout the West and over 25,000 live in Nevada alone. (Doc. #19-2 at 5 ¶ 10.) The AWHPC therefore argues that any decision regarding the roundup and removal of wild

1  horses concerns the AWHPC. (*Id.*) Specifically it seeks to intervene to ensure that the court
2  receives accurate information about wild horses and burros, their population numbers, and the
3  impacts of wild horses and burros on the range. (Doc. #19-2 at 5 ¶ 9.)
4    The AWHPC states it constantly monitors government agency decisions that affect wild
5  horses—including decisions authorizing government roundups, and the impacts of those
6  decisions on wild horses—in an effort to ensure that wild horses remain protected on public
7  lands as Congress intended under the Act. (Doc. #19-2 at 3 ¶ 4.) It also prepares alerts, published
8  by federal government agencies, in its campaigns, advocacy efforts, and public education
9  activities to notify interested citizens and its members about the opportunity to comment on
10 BLM management decisions and agency processes. (Doc. #19-2 at 4 ¶ 6.)
11   Ms. Davenport contends that she personally has a significant protectable interest in the
12 outcome of this lawsuit because she writes about and posts photographs of the Nevada desert
13 landscape and the wild horses on her blog. (Doc. #19-4 at 2 ¶ 2.) Additionally, Ms. Davenport
14 plans on returning to this area at least twice a year for the foreseeable future to explore the
15 Kamma Mountains and other HMAs to look for other wild horses. (Doc. #19-4 at 4 ¶ 6.)
16   The Ninth Circuit has found that there is a significant protectable interest in conserving
17 and enjoying the wild and preserving species and their habits. *See Citizens for Balanced Use*,
18 647 F.3d at 897-98 (finding wilderness conservation groups had significant protectable interest
19 in conserving and enjoying the wilderness); *United States v. Carpenter*, 526 F.3d 1237, 1240
20 (9th Cir. 2008) (environmental groups found to have protectable interest in using and preserving
21 public lands); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (intervention
22 proper where intervenor sought to preserve birds and habitats); *see also San Juan County v.*
23 *United States*, 503 F.3d 1163, 1199 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-63
24 (1992)) ("[T]he desire to use or observe an animal species, even for purely aesthetic purposes, is
25 undeniably a cognizable interest for purpose of standing.").
26   Here, the movants both assert a significant protectable interest in the management and
27 preservation of these wild animals under the Act and other federal laws and regulations.
28 Plaintiffs do not contest this second factor. The movants have shown a significant protectable

interest in preserving the wild horses in their natural habitat, of enjoying them aesthetically, and of providing information so that BLM makes an informed decision. Therefore, this factor weighs in favor of granting intervention as a matter of right.

### 3. Will the Disposition Impede the Applicant's Ability to Protect Its Interest?

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ." Fed. R. Civ. P. 24 advisory committee's note to 1966 Amendment.

The AWHPC contends that the relief sought by the Plaintiffs will impair its interests and those of its members because the result of the requested relief would frustrate the AWHPC's mission of preserving and protecting wild free-roaming horses in the state of Nevada by removing these wild horses from public lands and by affecting how BLM manages wild horses in the future. (Doc. #19-2 at 4-5 ¶ 7, 8.) The AWHPC represents it works with government agencies in Nevada to implement solutions for on-the-range management of wild horses in their habitats with the goal of preventing captures and removals; thus, any relief granted to Plaintiffs undeniably would prevent the AWHPC from carrying out its goal. (Doc. #19-2 at 3 ¶ 3.)

Ms. Davenport contends that a determination in Plaintiff's favor in this action would devastate wild horse herds in the areas in which she currently enjoys observing them and would significantly prevent her from writing about and photographing wild horses on the range. (Doc. #19-4 at 5 ¶ 11.) Specifically, the rounding up and removing of wild horses will extinguish opportunities for her to observe specific horse bands that she has connected with over the years as well as severing the familial ties of these horse populations. (*Id*.)

If Plaintiffs succeed in this action in obtaining a writ of mandamus requiring, among other things, the immediate gathering of "excess" animals, the removal of the "excess" animals, then these intervenors' interests would undoubtedly be impaired. The proposed intervenors both advocate that this would have the practical result of greatly reducing or decimating the wild horse population in Nevada. Assuming this is the case, the AWHPC would be deprived of the opportunity to view these animals in their natural state, of educating the public about these animals, and of affecting how BLM manages wild horses now and in the future. (Doc. #19-

1  2 at 5 ¶ 8.) Ms. Davenport would be deprived of the opportunity to view, write about, and
2  photograph these animals in the wild. (Doc. #19-4 at 5 ¶ 11.)

3  Plaintiffs contend that BLM has already determined the AML standards and the import of
4  this lawsuit is simply that BLM has failed to enforce its own policies and procedures. (Doc. # 50
5  at 14.) Furthermore, Plaintiffs contend that the disposition of the present case will not impair or
6  impede movants' interests because any remedy that movants can legitimately seek will still be
7  available once the BLM enforces AML standards. (Doc. #50 at 22.) However, it appears to the
8  court that movants' interests would be significantly impaired inasmuch as the Plaintiffs' relief
9  calls for the removal of wild horses to which the movants are directly opposed. It is reasonably
10 foreseeable that the absence of movants in this lawsuit and any decision entered in this matter
11 would be detrimental to the protection of movants' interests. Therefore, this factor weighs in
12 favor of granting intervention as a matter of right.

13 **4. Are the Movants' Interests Adequately Represented by Existing Parties?**

14 The Ninth Circuit evaluates the adequacy of representation by existing parties by
15 examining three factors: "(1) whether the interest of a present party is such that it will
16 undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is
17 capable and willing to make such arguments; and (3) whether a proposed intervenor would offer
18 any necessary elements to the proceedings that other parties would neglect." *Arakaki v.*
19 *Coyetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "The 'most important factor' in assessing the
20 adequacy of representation is 'how the [applicant's] interest compares with the interests of
21 existing parties.'" *Citizens for Balance Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at
22 1086). However, where "an applicant for intervention and an existing party share the same
23 ultimate objective, a presumption of adequacy of representation arises." *Id*. (citation omitted).
24 This presumption of adequacy applies when the government is acting on behalf of a constituent
25 and it must be rebutted with a "compelling showing" of inadequacy. *Id*.

26 Finally, the movants need not show with absolute certainty that an existing party will not
27 adequately represent their interest. *Citizens for Balanced Use*, 647 F.3d at 900. It is enough to
28 show that the existing parties *may* not adequately represent their interests. *Id*.

1    The AWHPC contends that the relief sought by the Plaintiffs directly conflicts with the
2    AWHPC's mission of protecting and preserving wild horse herds on public lands; therefore,
3    Plaintiffs do not share the AWHPC's interests. (Doc. #19-2 at 6 ¶ 11.) Similarly, the AWHPC
4    contends that the Federal Defendants also do not represent its interest because BLM is
5    responsible for balancing the interests of private livestock grazing and wild horses on public
6    lands but consistently favors the interests of cattle grazing. (Doc. #19-2 at 6 ¶ 12.)

7    Ms. Davenport contends that neither the Plaintiffs' nor the Federal Defendants share her
8    interests or can adequately represent her interests. (Doc. #19-4 at 6 ¶ 12.) She claims that the
9    Plaintiffs' interest in removing as many wild horses as possible is directly adverse to her
10   interests, which depends on the presence of wild horses. (*Id*.) She likewise claims that the
11   Federal Defendants are not likely to represent her interests because Federal Defendants tend to
12   favor livestock owners and other agricultural interests at the expense of wild horses and those
13   who advocate for their preservation. (Doc. #19-4 at 6 ¶ 13.)

14   Plaintiffs contend that the movants incorrectly represent Plaintiffs' intent and the overall
15   purpose of this litigation. (Doc. #50 at 4.) Plaintiffs assert that their interests in fact align with
16   those of the movants because both parties have the welfare of the animals and the public lands at
17   heart. (*Id*.). Plaintiffs' claim that BML has failed to maintain and manage the numbers of wild
18   horses and burros as set by BML in the AML standard for each designated HMA, leading to an
19   excess of wild horses and burros that disrupt the natural thriving ecological balance. (Doc. #50 at
20   14.) Plaintiffs' main contention is that they seek the enforcement of AML standards and not the
21   removal of every single wild horse and burro from the public lands in question. (Doc. #50 at 24.)

22   In response, the AWHPC and Ms. Davenport contend they seek to preserve and protect
23   their professional, aesthetic, recreational, education, and other interests in the wild horses that
24   use the public lands at issue. (Doc. #57 at 2.) They argue that Plaintiffs' response relies on "two
25   false premises": (1) all of the parties agree with Plaintiffs' reading of the applicable statutes, the
26   Act and the APA, and (2) that a party adequately represents the AWHPC and Ms. Davenport's
27   interests if they share any generalized interest in the subject matter of the case. (Doc. #57 at 3.)
28

1           The court agrees with the movants that their interests are not adequately represented by
2    either the Plaintiffs because their positions are diametrically opposed to one another. The
3    movants assert that Plaintiffs incorrectly assume that the parties agree about how the Act should
4    be interpreted when in fact the parties fundamentally disagree with one another's interpretation.
5    (Doc. #57 at 5.) Movants claim that the Act does not mandate the removal of any or all horses
6    above AML to achieve the BLM's goal of management actions (Doc. #57 at 6), while the
7    Plaintiffs claim the exact opposite. (Doc. #50 at 25.) Because the parties have opposing
8    interpretations of the Act, it is unlikely that Plaintiffs will be able to adequately represent
9    movants' interests in this lawsuit. Furthermore, although Plaintiffs and movants share an
10   appreciation and concern for wild horses and burros, their ultimate objectives seemingly differ
11   which suggests that Plaintiffs *may* not adequately represent movants' interests.

12          Similarly, the movants claim that they have different interests from those of the Federal
13   Defendants and therefore they would not adequately represent movants' interests. Although there
14   might exist some overlap of interests and positions, the Federal Defendants, who as noted above
15   did not take a position on movants' request for intervention, cannot be said to adequately
16   represent the personal, professional and educational interests asserted by the movants. Nor can
17   the Federal Defendants be said to adequately represent the economic, aesthetic and
18   environmental interests asserted by the movants.

19          While the government is presumed to represent the interests of its citizens, the movants
20   have adequately rebutted this presumption. According to the movants, BLM is responsible for
21   balancing the interests of private livestock grazing and wild horses on public lands, but in its
22   opinion, favors the interests of cattle grazing. (Doc. #19-2 at 6 ¶ 12; Doc. #19-4 at 6 ¶ 13.) The
23   movants, on the other hand, are interested in protecting and preserving the wild horses and
24   burros on public lands. (Doc. #19-2 at 3 ¶ 4; Doc. #19-4 at 6 ¶ 12.) Since the Federal Defendants
25   would be responsible for balancing both public and private interests, it is a reasonable
26   assumption that the Federal Defendants' interests may diverge from those of the movants.
27   Therefore, the court finds the movants have made a compelling showing that the Federal
28   Defendants would not adequately represent their interests in this matter.

Thus, this final factor weighs in favor of granting intervention to the movants as a matter of right.

### 5. Conclusion

The movants have shown that their motions were timely, that they have a significant protectable interest in this action, that the disposition of the action may impair their ability to protect their interests, and that the existing parties may not adequately represent their interests. As such, the movants are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a).

## B. PERMISSIVE INTERVENTION

The movants alternatively request that they be allowed to intervene permissively.

The movants contend that their motion is timely, federal question jurisdiction exists, and the claims and defenses concern common questions of law and fact with the main action. (Doc. #19-1 at 2.) This motion to intervene is timely as aforementioned. The court has federal question subject matter of the action even with the addition of the intervenors. The movants' claims or defenses share a common question of law or fact with the main action, and there is no evidence that their intervention will result in an undue delay in this action or will prejudice the adjudication of the existing parties' rights. Accordingly, the movants are likewise entitled to intervene permissively under Federal Rule of Civil Procedure 24(b).

## IV. CONCLUSION

The motion to intervene of AWHPC and Ms. Davenport is GRANTED. The movants are entitled to intervene as a matter of right, and alternatively, may intervene in this action permissively.

**IT IS SO ORDERED.**

DATED: June 12, 2015.

_____
**WILLIAM G. COBB**
**UNITED STATES MAGISTRATE JUDGE**

- 10 -